UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE CHILDERS, an individual,

    Plaintiff,

v.

GENERAL MOTORS LLC,

    Defendant.

Case No: 16-cv-14428
Hon. Nancy G. Edmunds
Mag. Anthony P. Patti

_____/

| Mayer Morganroth (P17966) | Margaret Carroll Alli (P38281) |
|---|---|
| Jeffrey M. Thomson (P72202) | Gregory M. Krause (P67142) |
| Morganroth & Morganroth, PLLC | Ogletree, Deakins, Nash, Stewart & Smoak, PLLC |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 344 N. Old Woodward Ave., Suite 200 | 34977 Woodward Avenue, Suite 300 |
| Birmingham, MI 48009 | Birmingham, MI 48009 |
| (248) 864-4000 | (248) 593-6400 |
| MMorganroth@morganrothlaw.com | meg.alli@ogletree.com |
| JThomson@morganrothlaw.com | gregory.krause@ogletree.com |

_____/

**SECOND AMENDED COMPLAINT AND
DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, Denise Childers ("Plaintiff"), by and through her attorneys, Morganroth & Morganroth, PLLC, and for her Second Amended Complaint against Defendant, General Motors LLC ("Defendant"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is and has been a resident of the City of Detroit, Wayne County, State of Michigan, at all times relevant hereto.

2. Defendant is a Delaware limited liability company which has its principal place of business located in, has conducted business in, Wayne County, State of Michigan, and has had in excess of 50,000 employees at all times relevant hereto.

3. The amount in controversy is greater than $75,000.00, exclusive of interest, costs and attorney fees.

4. Jurisdiction in this Court is appropriate under 28 U.S.C. §§ 1331 and 1367(a).

5. Venue in this Court is appropriate under 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

6. Plaintiff is a 63 year old African American woman.

7. Plaintiff is also disabled, has been suffering from Posttraumatic Stress Disorder ("PTSD") since October 2014, and continues to suffer from PTSD.

8. Plaintiff began working for Defendant in November 1989 as a Senior Financial Analyst.

9. Plaintiff has also been suffering from neck and back pain since October 2014, has a pinched nerve and continues to suffer from neck and back pain.

10. Plaintiff is currently employed by Defendant as a Lead Corporate Auditor.

11. Plaintiff is qualified for her current position, and has consistently performed all of her job responsibilities in an exemplary and satisfactory manner.

12. On January 31, 2014, Plaintiff's supervisor, Dottie Appleman, gave Plaintiff an excellent year-end performance review (2013 Year-End Commitment and Accountability Partnership ("CAP")).

13. Among other things, Plaintiff's 2013 Year-End CAP noted that Plaintiff performed well in her role as the Project Lead for the 2013 Global Business Services ("GBS") Global Financial Shared Services ("GFSS") Audit.

14. As a result of Plaintiff's excellent performance during 2013, she received a performance bonus, a merit based salary increase, and a GM Recognition Award.

15. Additionally, Plaintiff was assigned to be the Project Lead for the 2014 GBS GFSS Audit.

3

16. In July 2013, Crystal Gonzales was hired by GM as a Senior Corporate Auditor, and was assigned to work under Plaintiff's direction on the 2013 Global Business Services Audit.

17. Crystal Gonzales immediately began making derogatory comments to Plaintiff regarding African Americans and Plaintiff's age.

18. For example, Crystal Gonzales told Plaintiff, among other things, that:

    a. "Blacks do meth";

    b. "Blacks are always late"; and

    c. "You should be retiring soon."

19. In Plaintiff's capacity as Project Lead, she was responsible for reviewing the performance of her team members including Crystal Gonzales.

20. In that regard, Plaintiff reviewed and commented on a number of Crystal Gonzales's performance issues, such as:

    a. Playing Candy Crush (a video game) on her cell phone while at work; and

    b. Preparing taxes for individuals who are her personal clients (which she does as an outside business) during work time.

21. In retaliation for the negative performance reviews from Plaintiff, Crystal Gonzales began complaining to her friends, Dottie Appleman and Yazmin Wong, regarding Plaintiff as Project Lead.

22. Dottie Appleman (hired by Defendant in January 2013), Crystal Gonzales (hired by Defendant July 2013) and Yazmin Wong (hired by Defendant in late 2013), previously worked together at Lear Corporation along with Daniel Wiechec, GM Global Audit Director (Dottie Appleman's boss and friend) prior to being hired by Defendant.

23. Another Senior Auditor, Chase Collins, who was African American and also served on Plaintiff's team for the 2013 GBS Audit, was terminated for exhibiting the same performance problems as Crystal Gonzales.

24. Yazmin Wong, who was also a Lead Corporate Auditor, began going out of her way to bully and intimidate Plaintiff in retaliation for Plaintiff's negative review of her friend, Crystal Gonzales's performance.

25. Yazmin Wong made a number of inappropriate derogatory comments to Plaintiff regarding her age and African Americans in general.

26. Yazmin Wong also attempted to intimidate Plaintiff by playing a music video on her iPad of a song called "Loyal" by Chris Brown containing explicit language.

27. In June and July 2014, Plaintiff began to verbally complain about the derogatory remarks made by Yazmin Wong and Crystal Gonzales regarding Plaintiff's race and age to her supervisor, Dottie Appleman.

28. Plaintiff's relationship with Dottie Appleman suddenly changed for the worse.

29. On July 31, 2014, in retaliation for Plaintiff's complaints regarding Dottie Appleman's friends, Crystal Gonzales and Yazmin Wong, Dottie Appleman gave Plaintiff an unjustified negative performance evaluation (2014 Mid-Year CAP).

30. On October 1, 2014, Yazmin Wong physically attacked Plaintiff from behind while Plaintiff was sitting in a conference room at work, and repeatedly punched Plaintiff in the neck.

31. Crystal Gonzales was also present during the attack.

32. Plaintiff begged Crystal Gonzales for help, and pleaded with Crystal Gonzales to stop Yazmin Wong. Plaintiff screamed "get her off of me," and cried "don't touch me."

33. As a result of Yazmin Wong's physical attack, Plaintiff suffered a number of physical and mental injuries, including but not limited to: nose bleeds, high blood pressure, walking with a limp, inability to sleep, neck and back pain, a pinched nerve, blurred vision, headaches, confusion, anxiety, fear, paranoia, depression and PTSD.

34. The injuries sustained by Plaintiff have required extensive medical treatment and physical therapy, and have caused Plaintiff to miss more than 50 days of work (many of which she took as vacation days).

35. On October 2, 2014, Yazmin Wong continued to bully and taunt Plaintiff—she pointed her finger in Plaintiff's face and said "don't touch me," mocking Plaintiff's cries during the attack the day before.

36. The following week, Yazmin Wong took the laptop that had been assigned to Plaintiff by Deloitte, GM's outside auditors, which Plaintiff needed to properly perform her assignments.

37. On October 17, 2014, Plaintiff reported Yazmin Wong's attack to her supervisor, Dottie Appleman.

38. Dottie Appleman told Plaintiff not to discuss the incident with anyone.

39. On October 20, 2014, Dottie Appleman met with Plaintiff and advised Plaintiff that she would have to officially report the incident if Plaintiff insisted on moving forward with the complaint.

40. Dottie Appleman attempted to intimidate Plaintiff in order to convince Plaintiff not to pursue the complaint regarding Yazmin Wong's physical attack because of her personal friendship with Yazmin Wong.

41. On October 23, 2014, Crystal Gonzales told Plaintiff that she would lie and say that she did not see or hear anything if anyone asked her about her friend, Yazmin Wong, attacking Plaintiff on October 1, 2014.

42. Plaintiff's supervisor, Dottie Appleman, again, attempted to intimidate Plaintiff in order to convince Plaintiff not to pursue the complaints regarding Yazmin Wong's physical attack and Crystal Gonzales's attempt to intimidate Plaintiff because of Dottie Appleman's personal friendships with Yazmin Wong and Crystal Gonzales.

43. Thereafter, Plaintiff pursued a formal complaint regarding Yazmin Wong's physical assault through Defendant's human resources department.

44. In retaliation for Plaintiff's pursuit of a formal complaint regarding Yazmin Wong's physical assault, Plaintiff's supervisor, Dottie Appleman, and others within Defendant's organization began a relentless campaign to harass, intimidate, and maliciously punish Plaintiff.

45. During the 2015 calendar year, a number of adverse actions were taken by Defendant against Plaintiff, including:

    a. Plaintiff's supervisor, Dottie Appleman, and some of Plaintiff's other superiors, took measures to isolate Plaintiff from her friends and co-workers by instructing Plaintiff's friends and co-workers not to associate with Plaintiff and/or by relocating

        Plaintiff's friends to other areas within Defendant's organization so that they would no longer have regular contact with Plaintiff.

   b.   March 12, 2015 – Plaintiff was given an unjustified negative performance evaluation (2014 Year-End CAP).

   c.   March 12, 2015 – Plaintiff was improperly placed on an unjustified performance improvement plan ("PIP"), which remained in place until October 21, 2015.

   d.   April 2015 - Plaintiff requested permission to attend 1.5 hour counseling sessions with her therapist on a weekly basis. Defendant denied that request, and instead insisted that Plaintiff take unpaid medical leave. Defendant regularly permitted other similarly situated employees to attend medical appointments during the work day.

   e.   August 2015 – Plaintiff was given another unjustified negative performance evaluation (2015 Mid-year CAP).

46.   On January 4, 2016, after Defendant failed to do anything whatsoever in order to address Yazmin Wong's physical assault upon Plaintiff and the retaliatory actions against Plaintiff continued, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC").

47. After Plaintiff filed her EEOC complaint, the retaliatory actions against her continued.

48. During the 2016 calendar year, Defendant continued to retaliate against Plaintiff by, among other things:

    a. Defendant stripped Plaintiff of all substantive audit responsibilities, and assigned only menial administrative tasks such as scanning documents and copying and pasting electronic files.

    b. GM employment practices and policies were not equally applied to Plaintiff. Plaintiff was required to take medical leave to attend counseling sessions with her therapist, whereas other employees were routinely permitted to attend doctor and other personal appointments during work hours.

    c. July 2016 - Plaintiff was given another unjustified negative performance evaluation (2016 Mid-year CAP).

49. Plaintiff has exhausted her administrative remedies, and received a Notice of Right to Sue from the EEOC on October 4, 2016.

**COUNT I – DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND RETALIATION IN VIOLATION OF TITLE VII**

50. Plaintiff incorporates by reference and realleges the allegations set forth above as if fully restated herein.

51. Plaintiff is African American, and is a member of protected classes based upon her race and age.

52. Defendant has intentionally discriminated against Plaintiff with respect to her employment, compensation, terms, conditions, and/or privileges of employment because of her race in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.

53. Defendant treats other similarly situated non-African American employees better than Plaintiff.

54. Defendant has intentionally discriminated against Plaintiff, by among other things:

    a. Giving Plaintiff unjustified negative performance reviews, and correspondingly lower performance-based compensation;

    b. Failing to protect Plaintiff from physical attacks, bullying, intimidation and harassment from co-workers on account of her race and age; and

    c. Retaliating against Plaintiff for making complaints regarding the physical attack, bullying, intimidation and harassment on account of her race and age that she endured at the hands of her co-workers.

...
...

55. Defendant's conduct in this regard has unreasonably interfered with Plaintiff's work performance, and as such, has created a hostile work environment.

56. As a direct, natural, and proximate consequence of the foregoing, Plaintiff has suffered damages for which she is entitled to recover, including, but not limited to, lost income, lost benefits, severe and extreme pain and suffering, loss of reputation, professional status and esteem in the community, humiliation and degradation.

WHEREFORE, Plaintiff demands the following damages against Defendant:

A. Compensatory damages, past and future, including loss of income and severance pay, in excess of $75,000;

B. Pain and suffering, embarrassment, humiliation, loss of esteem and reputation, past and future, in excess of $75,000;

C. Exemplary damages in an amount to be determined;

D. Costs and attorney fees pursuant to 42 U.S.C. § 2000e-5(k);

E. Interest; and

F. Such other and further relief as is warranted and appropriate.

### COUNT II – AGE DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

57. Plaintiff incorporates by reference and realleges the allegations set forth above as if fully restated herein.

58. Plaintiff is African American, and is a member of a protected class based upon her age.

59. Defendant has intentionally discriminated against Plaintiff with respect to her employment, compensation, terms, conditions, and/or privileges of employment because of her age in violation of the Age Discrimination in Employment Act 29 U.S.C. §§ 621, et seq.

60. Defendant treats other similarly situated younger employees better than Plaintiff.

61. Defendant has intentionally discriminated against Plaintiff, by among other things:

    a. Giving Plaintiff unjustified negative performance reviews, and correspondingly lower performance-based compensation;

    b. Failing to protect Plaintiff from physical attacks, bullying, intimidation and harassment from co-workers on account of her race and age; and

    c. Retaliating against Plaintiff for making complaints regarding the physical attack, bullying, intimidation and harassment on account of her race and age that she endured at the hands of her co-workers.

62. Defendant's conduct in this regard has unreasonably interfered with Plaintiff's work performance, and as such, has created a hostile work environment.

63. As a direct, natural, and proximate consequence of the foregoing, Plaintiff has suffered damages for which she is entitled to recover, including, but not limited to, lost income, lost benefits, severe and extreme pain and suffering, loss of reputation, professional status and esteem in the community, humiliation and degradation.

WHEREFORE, Plaintiff demands the following damages against Defendant:

A. Compensatory damages, past and future, including loss of income and severance pay, in excess of $75,000;

B. Pain and suffering, embarrassment, humiliation, loss of esteem and reputation, past and future, in excess of $75,000;

C. Exemplary damages in an amount to be determined;

D. Costs and attorney fees pursuant to 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b);

E. Interest; and

F. Such other and further relief as is warranted and appropriate.

**COUNT III – FAILURE TO MAKE REASONABLE ACCOMODATIONS UNDER THE AMERICANS WITH DISABILITIES ACT**

64. Plaintiff incorporates by reference and realleges the allegations set forth above as if fully restated herein.

65. Plaintiff suffers from PTSD and is disabled.

66. Plaintiff requested that Defendant provide Plaintiff with a modified work schedule so that Plaintiff could attend 1.5 hour counseling sessions with her therapist on a weekly basis.

67. Defendant refused to provide Plaintiff with the requested modified work schedule, and instead insisted that Plaintiff take unpaid medical leave in order to attend Plaintiff's weekly 1.5 hour counseling sessions with her therapist.

68. Defendant's failure to permit Plaintiff to work on a modified schedule constitutes a failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act.

69. Plaintiff also requested that Defendant provide Plaintiff with a reasonable accommodation so that Plaintiff could work from home on a limited periodic basis after Plaintiff's early morning physical therapy sessions, which were very painful.

70. At that time, Plaintiff had already been stripped of all substantive responsibilities, and could easily have completed the menial administrative tasks that Defendant had assigned to her while working at home.

71. Defendant denied Plaintiff's request for a reasonable accommodation so that Plaintiff could work from home, even though Defendant had permitted other employees to work from home for months at a time.

15

72. As a direct, natural, and proximate consequence of the foregoing, Plaintiff has suffered damages for which she is entitled to recover, including, but not limited to, lost income, lost benefits, severe and extreme pain and suffering, loss of reputation, professional status and esteem in the community, humiliation and degradation.

WHEREFORE, Plaintiff demands the following damages against Defendant:

A. Compensatory damages, past and future, including loss of income and severance pay, in excess of $75,000;

B. Pain and suffering, embarrassment, humiliation, loss of esteem and reputation, past and future, in excess of $75,000;

C. Exemplary damages in an amount to be determined;

D. Costs and attorney fees pursuant to 42 U.S.C. § 12205;

E. Interest; and

F. Such other and further relief as is warranted and appropriate.

### COUNT IV – RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

73. Plaintiff incorporates by reference and realleges the allegations set forth above as if fully restated herein.

74. Plaintiff is African American, and is a member of a protected class based upon her race.

75. Defendant has intentionally discriminated against Plaintiff with respect to her employment, compensation, terms, conditions, and/or privileges of employment because of her race in violation of the 42 U.S.C. § 1981.

76. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when she complained of and opposed Defendant's and Defendant's employees' unlawful discrimination, harassment and retaliation.

77. Defendant treats other similarly situated non-African American employees better than Plaintiff.

78. Defendant has intentionally discriminated and retaliated against Plaintiff, by among other things:

   a. Giving Plaintiff unjustified negative performance reviews, and correspondingly lower performance-based compensation, on account of her race;

   b. Failing to protect Plaintiff from physical attacks, bullying, intimidation and harassment from co-workers on account of her race; and

   c. Retaliating against Plaintiff for making complaints regarding the physical attack, bullying, intimidation and harassment on account of her race that she endured at the hands of her co-workers.

79. Defendant's conduct in this regard has unreasonably interfered with Plaintiff's work performance, and as such, has created a hostile work environment.

80. Defendant's intentional discriminatory conduct was willful and carried out with malice or with reckless indifference towards Plaintiff.

81. As a direct, natural, and proximate consequence of the foregoing, Plaintiff has suffered damages for which she is entitled to recover, including, but not limited to, lost income, lost benefits, severe and extreme pain and suffering, loss of reputation, professional status and esteem in the community, humiliation and degradation.

WHEREFORE, Plaintiff demands the following damages against Defendant:

A. Compensatory damages, past and future, including loss of income and severance pay, in excess of $75,000;

B. Pain and suffering, embarrassment, humiliation, loss of esteem and reputation, past and future, in excess of $75,000;

C. Punitive and exemplary damages in an amount to be determined;

D. Costs and attorney fees;

E. Interest; and

F. Such other and further relief as is warranted and appropriate.

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Denise Childers, by and through her attorneys, Morganroth & Morganroth, PLLC, and hereby demands a trial by jury in the above-entitled matter.

                                    Respectfully submitted,

                                    MORGANROTH & MORGANROTH, PLLC

                                    By: /s/ Jeffrey M. Thomson
                                    MAYER MORGANROTH (P17966)
                                    JEFFREY M. THOMSON (P72202)
                                    Attorneys for Plaintiff
                                    344 N. Old Woodward Ave., Suite 200
                                    Birmingham, MI 48009
                                    jthomson@morganrothlaw.com

Dated: May 9, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2018, I have filed the foregoing document electronically with the Clerk of the Court using the ECF system which will send electronic notification of such filing to all counsel of record.

                    MORGANROTH & MORGANROTH, PLLC

                    By: /s/ Jeffrey M. Thomson
                    JEFFREY M. THOMSON (P72202)
                    Attorneys for Plaintiff
                    jthomson@morganrothlaw.com