UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE CHILDERS,

      Plaintiff,                                       Civil Action No. 16-CV-14428

vs.                                              HON. BERNARD A. FRIEDMAN

GENERAL MOTORS LLC,

      Defendant.
_____/

DENISE CHILDERS,

      Plaintiff,                                       Civil Action No. 20-CV-10081

vs.                                              HON. BERNARD A. FRIEDMAN

GENERAL MOTORS LLC,

      Defendant.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      This matter is presently before the Court on defendant's motion in 20-10081 for

summary judgment (ECF No. 157). Plaintiff has responded and defendant has replied. Pursuant to

E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the reasons stated

below, the Court shall grant the motion.

      In these consolidated cases,[1] plaintiff claims that defendant has violated her rights

under various civil rights statutes. In 16-14428, which concerns the time frame before December

---

[1] 20-CV-10081 was assigned to the Court by blind draw. 16-14428 was reassigned to the
Court in December 2019 when Judge Edmunds recused herself. *See* ECF No. 131. The two
cases were then consolidated for all purposes. *See* ECF No. 132.

22, 2016, the Court granted summary judgment for defendant except on plaintiff's claim that defendant retaliated against her for filing a charge with the Equal Employment Opportunity Commission ("EEOC") in January 2016.[2] *See Childers v. Gen. Motors LLC*, No. 16-14428, 2019 WL 630274 (E.D. Mich. Feb. 14, 2019). Specifically, the Court held that "[t]he alleged adverse acts that took place after Plaintiff filed her EEOC complaint—not being assigned to an audit and being required to scan documents and organize electronic files—are sufficient to create a jury question on the issue of whether Plaintiff suffered an adverse employment action." *Id*. at *8. The Court also found that a jury must determine causation, i.e., whether defendant took this allegedly adverse action because plaintiff filed an EEOC charge, as "the close temporal proximity between Plaintiff's EEOC complaint and the reduced substantive responsibilities assigned to Plaintiff raises an inference that these acts were motivated by retaliatory animus"; and whether defendant had a legitimate, non-retaliatory reason for the allegedly adverse action. *Id.* at *8-9. Therefore, the only claim remaining

---

[2] In this Charge of Discrimination, plaintiff stated in relevant part:

> I began working at for [sic] the above-named employer in November of 1989 and am currently employed as a Lead Corporate Auditor.
>
> In October of 2014 I made a complaint of race, sex and age discrimination by a co-worker. Since I made my complaint, my Supervisor has treated me differently and subjected me to greater scrutiny. I am no longer able to use my cell phone in the office even though my co-workers have no such restriction. I received an undeserved, negative evaluation in March of 2015 and was put on a performance improvement plan that lasted through October 21, 2015. Further, in April of 2015 I asked for an hour off per week due to my disability and was denied. Co-workers, who have not made discrimination complaints, are routinely accommodated when flexibility in their schedules are necessary.

Pl.'s Ex. 3.

in 16-14428 is that by assigning plaintiff non-substantive work, defendant was retaliating against her for filing the EEOC charge.

The claims in 20-10081 are "based upon GM's alleged conduct between December 22, 2016 and December 20, 2019," i.e., the period of time between the filing of plaintiff's two lawsuits. ECF No. 144 at 3 (quoting Pl.'s Br. in Resp. to Def.'s Mot. to Dismiss, ECF No. 140 at 1). The complaint in 20-10081 makes the following allegations in support of plaintiff's claim that defendant discriminated and retaliated against her in violation of 42 U.S.C. § 1981:

> 62. Plaintiff is African American . . .
>
> 63. Defendant has intentionally discriminated against Plaintiff with respect to her employment, compensation, terms, conditions, and/or privileges of employment because of her race in violation of 42 U.S.C. § 1981.
>
> 64. Plaintiff engaged in multiple acts of activity protected by 42 U.S.C. § 1981 when she complained of and opposed Defendant's and Defendant's employees' unlawful discrimination, harassment, and retaliation, filed an administrative charge with the EEOC, and filed a lawsuit against Defendant in the United States District Court for the Eastern District of Michigan on December 21, 2016, among other things.
>
> 65. Defendant treats other similarly situated non-African American employees better than Plaintiff.
>
> 66. Between December 22, 2016 and the present, Defendant intentionally discriminated and retaliated against Plaintiff, by among other things:
>
>> a. Giving Plaintiff false and unjustified negative performance reviews and correspondingly lower performance-based compensation.
>>
>> b. Excessively monitoring Plaintiff's attendance, and penalizing Plaintiff for missing work to attend medical appointments and obtain medical treatment, which was not done for other similarly situated salaried employees.

c. Applying GM employment practices and policies in a disparate manner and requiring Plaintiff to take medical leave to attend counseling sessions with her therapist or attend other medical appointments, whereas other employees were routinely permitted to attend doctor and other personal appointments during work hours.

d. Unjustifiably giving lower bonuses (or no bonus at all) to Plaintiff when the vast majority of (if not all) similarly situated employees received higher bonuses than Plaintiff.

e. Unjustifiably giving Plaintiff lower raises (or no raise at all) the [sic] vast majority of (if not all) similarly situated employees received higher raises than Plaintiff.

67. Defendant's intentional discriminatory and retaliatory conduct was unlawful and carried out with malice or with reckless indifference towards Plaintiff.

68. As a direct, natural, and proximate consequence of the foregoing, Plaintiff has suffered damages . . . .

Compl. (in 20-10081) ¶¶ 62-68.

### Legal Standards

Defendant seeks summary judgment on these § 1981 claims.[3]  In deciding this

motion, the Court

must view the evidence in the light most favorable to the party opposing the motion for summary judgment. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020). "This includes drawing 'all justifiable inferences' in the nonmoving party's favor." *George*, 966 F.3d at 458 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202

---

[3] It appears that defendant also seeks reconsideration of Judge Edmunds' ruling that the retaliation claim in 16-14428 survived defendant's summary judgment motion in that case.  *See* Def.'s Reply at 6 n.8 (PageID.6989).  Judge Edmunds denied defendant's motion for reconsideration of that ruling in September 2019.  *See Childers v. Gen. Motors LLC*, No. 16-14428, 2019 WL 4735396 (E.D. Mich. Sept. 28, 2019).  The Court does not intend to revisit that ruling.

(1986)). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson-VHS*, 814 F.3d at 775 (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

*Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021).

"We review claims of alleged race discrimination [and retaliation] brought under § 1981 and the Elliott-Larsen Act under the same standards as claims of race discrimination brought under Title VII ...." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999); *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 627 (6th Cir. 2013); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 464 (6th Cir. 2001). "At the summary-judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on a Title VII race-discrimination claim" or retaliation claim. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009); *see also Wade*, 259 F.3d at 464. If the plaintiff offers only circumstantial evidence of racial discrimination, the *McDonnell Douglas* burden-shifting framework applies. *Upshaw*, 576 F.3d at 584. Under this framework, the plaintiff must first make out a prima facie case of racial discrimination or retaliation. *Id*. Then, "the burden shifts to the employer to proffer a legitimate, nondiscriminatory [or nonretaliatory] reason for its decision." *Id*. If the employer does so, "the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id*.

*Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771-72 (6th Cir. 2018) (footnote omitted).

As Judge Edmunds noted in her opinion granting in part and denying in part defendant's motion for summary judgment in 16-14428, "[t]o establish a prima facie case of discrimination [under § 1981], Plaintiff must show that 1) she was a member of a protected class . . . 2) she was subject to an adverse employment action, 3) she was qualified for the position, and 4) she was treated differently than similarly-situated employees outside of the protected class." *Childers*, 2019 WL 630274, at *4 (E.D. Mich. Feb. 14, 2019). Judge Edmunds further noted:

An adverse employment action is a "'materially adverse change in the terms or conditions of the employment because of the employer's actions.'" *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584,

593 (6th Cir. 2007) (quoting *Allen v. Mich. Dep't of Corrs.*, 165 F.3d 405, 410 (6th Cir. 1999)). This materially adverse change must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *Id.* at 594 (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002)).

\*     \*     \*

To prove different treatment, Plaintiff must show that she was treated less favorably than co-workers who were similarly situated for the same or similar conduct. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). To be similarly situated, "the individuals with whom [she] compares herself 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* at 906 (quoting *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 599 (6th Cir. 2001)).

*Id.* at *5.

Additionally,

[i]n order to establish her prima facie case of retaliation, Plaintiff must establish that 1) she engaged in protected activity, 2) GM knew she exercised a protected right, 3) an adverse employment action was subsequently taken against her, and 4) there was a causal connection between the protected activity and the adverse employment action. *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (Title VII); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (ADEA); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001) (§ 1981). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (internal quotations and citation omitted).

*Id.* at *6.

*Discussion*

Plaintiff points to the same allegedly adverse employment actions in support of her discrimination and retaliation claims: "Micromanaging [her] attendance, falsely reprimanding her for taking more vacation days than allotted, false CAPs [performance reviews], provision of lower bonuses, and denial of raises."[4] Pl.'s Br. at 23. The gist of plaintiff's claim is that her supervisor, Clayton Snyder, unfairly focused on her attendance, gave her unfairly low performance reviews (including because of her attendance), thereby causing her to receive lower bonuses and raises than those to which she believed to be entitled in 2016-19, and that he did so for racially discriminatory reasons and/or in retaliation for plaintiff filing her 2016 EEOC charge and her 2016 lawsuit (16-CV-14428).

The Court shall grant summary judgment for defendant on plaintiff's discrimination claim because she has failed to meet the fourth element of a prima facie case, namely, identifying any similarly-situated, non-minority GM employees who were treated more favorably than plaintiff. As noted, similarly situated individuals are those who dealt with the same supervisor and were subjected to the same standards. Further, "[f]or a plaintiff to show that a non-protected employee is similarly situated, he must 'prove that all of the relevant aspects of his employment situation were

_____

[4] In her complaint in 20-10081, plaintiff also alleges other adverse actions in the form of "[e]xcessively monitoring [her] attendance," "penalizing [her] for missing work to attend medical appointments and obtain medical treatment," "[a]pplying GM employment practices and policies in a disparate manner," and "requiring [her] to take medical leave to attend counseling sessions with her therapist or attend other medical appointments." Compl. ¶ 66. None of these qualify as "materially adverse change[s] in the terms or conditions of the employment," as required by *Michael*, 496 F.3d at 593. The Court deems them abandoned in any event because plaintiff does not raise them as examples of adverse action in her response to the instant motion. Therefore, the only adverse employment actions at issue in this case are plaintiff's allegedly unfair performance reviews and her low (or no) bonuses and raises in 2016-19.

nearly identical to those of [the non-minority's] employment situation.'" *Hill v. Nicholson*, 383 F.

App'x 503, 509 (6th Cir. 2010) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344,

352 (6th Cir.1998)).

Plaintiff bases her discrimination claim on her allegedly low bonuses and raises from

2016 through 2019. She indicates that in 2017 (based on her 2016 performance review) she

"received only 65% of her target bonus" and no raise.[5] Pl.'s Br. at 4-5. In 2018,[6] she received 90%

of her target bonus and no raise. *See id.* at 8, 10. In 2019 (based on her 2018 performance review)

plaintiff argues in her response brief that she "received 0% of her target bonus," *id.* at 5, but at her

deposition plaintiff acknowledged that she "received a hundred percent team GM bonus for the 2019

time period." Pl.'s July 2, 2020, Dep. at 71. Apparently plaintiff received no raise in 2019, but she

did receive a two percent raise in early 2020. *Id.* at 72.

Instead of identifying any particular non-minority employees who received higher

bonuses and raises, plaintiff relies exclusively on her Exhibit 19 (ECF No. 161). This is a multi-

page spreadsheet provided by defendant in response to one of plaintiff's interrogatories. It lists an

"as of date" for each entry, along with the names of many GM employees, their race, birth date,

service date, grade, title, compensation, PAR%, amount of TeamGM bonus received, highest

degrees obtained, and professional certifications. Citing this exhibit exclusively, plaintiff makes

statements such as "No non-Black Level 7 GMAS employee ever received a PAR value of 0%," "No

---

[5] The percentage of the bonus an employee receives is determined, in part, by the employee's "PAR" rating which, in turn, is based on the employee's performance review. *See* Def.'s Ex. 11 (Redlin Aff.) ¶¶ 5-6.

[6] Plaintiff was on a disability leave of absence from January 26 to November 28, 2017, and she took vacation from November 30 to December 22, 2017. *See* Def.'s Ex. 13. As a result, she received no performance review for 2017. *See* Pl.'s July 2, 2020, Dep. at 75.

non-Black Level 7 GMAS employee received a PAR value of less than 100% in two consecutive years, let along three," and "[i]n 2018, [plaintiff's] 90% PAR value was lower than all but one of the 30 non-Black Level 7 GMAS employees that received a bonus." Pl.'s Br. at 10-11.

These statements, and the other similar statements within plaintiff's discussion under the heading "[Plaintiff] Received Lower Bonuses and Raises than Similarly Situated Non-Black Employees," *id.* at 10-12, do not suffice to meet plaintiff's burden under *Hill*, 383 F. App'x at 509, and the other cases cited above, which require plaintiff, as part of her prima facie case, to identify specific non-minority individuals whom defendant treated more favorably than plaintiff and to show that they are similarly situated to her in all relevant respects. Plaintiff has not done this. Her Exhibit 19 does not indicate the employees' supervisors, and plaintiff does not state whether these other employees were supervised by Clayton Snyder, as plaintiff was. Nor does Exhibit 19 indicate, and plaintiff does not state, whether any of the other employees on this spreadsheet performed the same type of work as plaintiff, as only the employees' job titles are disclosed, e.g., "senior corporate auditor," "senior IT auditor," "finance analyst," "dealer auditor," and "IT cyber security auditor." It is entirely unclear whether any of these other employees' job responsibilities are similar to those of plaintiff, who is a level 7 or 7A auditor in the General Motors Audit Services ("GMAS") group. *See* Def.'s Summ. J. Br. at 1. Plaintiff refers to herself as a "lead corporate auditor." *See supra* n.2. Plaintiff herself argues that some of the employees on this spreadsheet are not comparable because their job titles are different from hers and they reported to different managers than she did. *See* Pl.'s Br. at 11 (arguing that "dealer auditors" and "senior finance analysts" are not comparable). Again, however, plaintiff fails to explain which, if any, of the other employees on this exhibits are appropriate comparables.

Most significantly, plaintiff has failed to identify a single non-minority employee who was treated more favorably and who was absent from work for as much time as was plaintiff. At her deposition, plaintiff acknowledged that, in addition to vacation days, she was on disability leaves of absence for *ten months in 2017* (February through November), *four months in 2018* (May through August), and for *29% of the workdays in 2019*. Pl.'s July 2, 2020, Dep. at 15, 18, 20, 24, 30-32. Exhibit 19 does not indicate, and plaintiff does not state, whether any of the other employees on this table had comparable absenteeism rates.

In short, plaintiff's discrimination claim fails because plaintiff has not identified even one non-minority employee who was similarly situated to plaintiff in all relevant respects (i.e., who had the same supervisor, the same job responsibilities, and the same attendance record) and who received higher bonuses and/or raises than did plaintiff in the 2016-19 time period. As plaintiff has not stated a prima facie case of discrimination, the Court need not consider whether defendant has offered legitimate, nondiscriminatory reasons for plaintiff's bonuses and raises.

This leaves plaintiff's claim that she received subpar performance reviews, and lower bonuses and raises than she desired, in retaliation for filing her January 2016 EEOC charge and for filing her 2016 lawsuit (16-14428).[7] The Court shall grant summary judgment for defendant on this claim because plaintiff has failed to meet the fourth element of a prima facie case, namely,

---

[7] While plaintiff asserts that she engaged in other protected activity ("complain[ing] of and oppos[ing] Defendant's and Defendant's employees' unlawful discrimination, harassment and retaliation") Compl. ¶ 64, Judge Edmunds has already ruled that these complaints were too vague to qualify as activity protected by Title VII or § 1981. *See Childers*, 2019 WL 630274, at *6-7. The Court agrees with this assessment. Further, plaintiff has abandoned any claim that such complaints constitute protected activity, as it is apparent from her response to the instant motion that she relies only on the filing of her EEOC charge and the filing of 16-CV-14428 as instances of her protected activity. *See* Pl.'s Br. at 22.

producing evidence of a "causal connection between the protected activity and the adverse employment action." *Childers*, 2019 WL 630274, at \*6. "Plaintiff must show that her protected activity was the but-for cause for Defendant's allegedly adverse actions." *Id.* at \*8 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)).

Judge Edmunds ruled in 16-14428 that plaintiff produced evidence of a causal connection between the filing of her EEOC charge and the reduction in her job duties due to the brief period of time between these events. *See Childers*, 2019 WL 630274, at \*8. In 20-10081, however, no such "temporal proximity" exists. Plaintiff argues that her bonuses and raises were low because the performance reviews prepared by Snyder rated her as "partially achiev[ing] expectations." *See* Pl.'s Br. at 8. The first such performance review was for 2016. *See* Def.'s Ex. 4. However, plaintiff testified at her deposition that this review was prepared "in 2017, either November or December." Pl.'s Dep. at 43. This would have been nearly two years after plaintiff filed her EEOC charge and approximately one year after she commenced 16-14428. The 2019 performance review (for 2018) was prepared even later. No inference of causation arises, based on temporal proximity alone, when the period of time between the protected activity and the adverse action is as long as this. As the Sixth Circuit has noted,

> temporal proximity alone is "enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation" only when "an adverse employment action occurs very close in time after an employer learns of a protected activity." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (finding temporal proximity to be sufficient evidence of causation where termination occurred on the same day as employer learned of protected conduct). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.*; *see also Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir.1999)

(finding that temporal proximity of "two to five months" between protected conduct and adverse action is insufficient); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986) (finding that, where employer filed disciplinary notices only weeks after protected conduct and discharged plaintiff within four months of the protected conduct, temporal proximity is insufficient to support an inference of retaliation).

*Williams v. Zurz*, 503 F. App'x 367, 373 (6th Cir. 2012).

As plaintiff cannot establish causation based on temporal proximity, she must produce other evidence of causation. Such evidence can consist of "differential treatment of similarly situated comparators." *Mitchell v. Per-Se Techs., Inc.*, 64 F. App'x 926, 927 (6th Cir. 2003). As noted above, however, plaintiff has failed to identify any similarly situated comparators, i.e., other auditors who had the same supervisor, the same job responsibilities, and the same attendance record, and who received higher bonuses and/or raises than did plaintiff in the 2016-19 time period.

In a final attempt to produce evidence of retaliatory motive, plaintiff points to a letter dated January 4, 2017, in which Snyder cautioned her about her attendance. *See* Pl.'s Ex. 12. Snyder indicated that "you have habitually taken extra days off from work in addition to your annual vacation entitlement of 30 days. Your excessive absenteeism and pattern of unplanned absences continue to create a disruption to the team." *Id.* at 1. This letter is not evidence of retaliatory motive for two reasons. First, it came far too long after plaintiff filed her EEOC charge to be connected with that protected activity, and plaintiff points to no evidence suggesting that Snyder was aware by January 4, 2017, that she had filed the 16-14428 complaint two weeks earlier.[8] Second, Snyder's

---

[8] The complaint in 16-14428 was filed on December 21, 2016, and defendant's resident agent was served with process on December 30, 2016. *See* ECF Nos. 1 and 6. Monday, January 4, 2017, was the first business day thereafter. Counsel entered their appearance for defendant on

criticism of plaintiff's attendance was, according to his letter, a "follow-up to our previous discussions during the mid-year evaluation process, specifically on July 27, 2016, regarding your continued attendance problem."[9] Pl.'s Ex. 12 at 1. Obviously, the January 4 letter was not prompted by either the filing of the EEOC charge or the filing of the lawsuit.

The Court concludes that plaintiff has failed to state a prima facie case of retaliation because she has produced no evidence that gives rise to an inference that any of the performance reviews (or the bonuses and raises derived therefrom) are causally connected to the filing of either her January 2016 EEOC charge or her December 2016 lawsuit.

**Conclusion**

For the reasons stated above, the Court concludes that defendant is entitled to summary judgment on both of plaintiff's claims in 20-10081 for plaintiff's failure to state a prima facie case. Defendant is entitled to summary judgment on plaintiff's discrimination claim because plaintiff has failed to identify any similarly situated, non-minority auditors who were treated more

---

January 10, 2017. *See* ECF Nos. 7 and 8.

[9] Snyder's mid-year comments regarding plaintiff's attendance issues were as follows:

> There have been challenges in getting Denise assigned to audits and consultative reviews due to the behaviors exhibited and unpredictability of her schedule (e.g. unplanned vacation days).
>
> *  *  *
>
> - Internal quality assurance review assessment - Unplanned vacation days were not communicated to her Manager or team members (C. Snyder, R. Gannon) until ~2 weeks into the assignment, which caused concerns for meeting the project deadline and had to transition the assignment to another GMAS individual.

Def.'s Ex. 19.

favorably than she. Defendant is entitled to summary judgment on plaintiff's retaliation claim because plaintiff has failed to produce evidence of a causal connection between her protected activity and any adverse employment action. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted as to all of plaintiff's claims in 20-10081. The case shall proceed to trial only on the claim in 16-14428 that defendant retaliated against plaintiff for filing her EEOC charge by assigning her non-substantive work.

|  | s/Bernard A. Friedman |
| Dated:  June 28, 2021 | BERNARD A. FRIEDMAN |
|        Detroit, Michigan | SENIOR UNITED STATES DISTRICT JUDGE |

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 28, 2021.

| Denise Childers | s/Johnetta M. Curry-Williams |
| 103 Mount Vernon | Case Manager |
| Detroit, MI 48202 | |
| Razpberryfoxx@aol.com | |